PER CURIAM.
In this products liability action resulting from a fall from a ladder, Charles Ains-worth asserts that the trial court erred by excluding the testimony of his three expert witnesses intended to prove the presence of a malfunction and product defect causing his accident. Ainsworth raises three *298 points on appeal regarding the motions in limine directed at the experts. We affirm in all respects for the reasons that follow..
Ainsworth filed suit against Keller Industries, Inc., Keller Ladders, Inc., Ames True Temper, Inc., H.C.A., Inc., HCAC, Inc., KLI, Inc., KLI Global, Inc., Relleck, Inc., Werner Ladder Co., Werner Co., U.S. Industries, Inc., and USI Atlantic Corp. (with the ease proceeding against only KLI and KLI Global following the stipulated dismissal of the other defendants). The case involved a Keller Ladders, 67 series, model 676, six-foot, fiberglass step ladder, type II, commercial. Ainsworth alleged that the ladder was defective, by being prone to Type II racking or torsional instability, and caused him to fall and sustain injury. Ainsworth included two counts in his products liability complaint: negligence and strict liability.
After several failed attempts at setting trial, the case was set on the December 12, 2005 to January 20, 2006 jury trial docket (with docket call scheduled for November 18, 2005). The order setting the case on the docket included the following provision: “MOTIONS IN LIMINE and Fnje hearings will not be heard at docket call or any day of trial. All parties shall schedule MOTIONS IN LIMINE and Frye hearings prior to the date set for docket call.” Additionally, the parties subsequently agreed in their Joint Pretrial Stipulation that “[mjotions in limine will be filed prior to the first day of trial.”
On the first day of trial (January 3, 2006), KLI filed a document containing thirty-three motions in limine primarily directed at Ainsworth’s three expert witnesses (although the document was served on December 29, 2005). Motions in Li-mine Fifteen through Nineteen involved expert witness Oren Masory, Motions in Limine Twenty through Twenty-five involved expert witness Frank Grate, and Motions in Limine Twenty-six through Thirty-three involved expert witness Irving Ojalvo. The motions in limine sought to preclude the testimony of the three experts opining that the cause of Ains-worth’s fall was Type II racking or torsional instability, which occurs when the legs of a ladder unexpectedly shift from the footprint of a rectangle to the footprint of a parallelogram while someone is using the ladder.
From the motions in limine and the documents that they referenced, the trial court was aware of the following expert opinion about the possibility of Type II racking or torsional instability being the cause of Ainsworth’s accident. Masory opined in his deposition that the accident could involve a racking scenario in which Ainsworth climbed the ladder and the right rear leg lost contact with the ground due to him supporting himself with his right hand while climbing, but admitted that this was just one of many possible reasons that Ainsworth could have fallen from the ladder. In fact, Masory testified that he reached the conclusion that Type II racking or torsional instability was the cause of Ainsworth’s accident not based so much on Ainsworth’s account of events, but because he eliminated any static failure of the ladder as a cause of the accident so that some unknown type of dynamic failure, potentially Type II racking or torsional instability, was likely the cause of Ainsworth’s fall.
Grate explained in his deposition the criteria he employed to reach the conclusion that Ainsworth’s accident was caused by torsional instability:
If a person is setting it up and they’re explaining to me what they’re doing to the ladder which is not unreasonable, such as leaning all the way — they can go one side or the other, which is unreasonable, but if they are just leaning slightly *299 to the left or to the right when they do this, this accident happens, they [sic] I consider this to be torsional stability problem.
I would tell you in general, it has to be the first time they go up the ladder, after they set it up. After they’ve been up there once or twice, once even, and have done any work up there — Now, if they walk and walk straight back down, different thing. But if they’ve gone up and done work on the ladder, I would rule it as out.
If they haven’t done work on the ladder, this is the first time they set it up and they walked up and have not done anything unusual with the ladder, I consider this to be a great explanation of exactly why they fell.
Grate also explained the mechanics of the occurrence of torsional instability:
Well, first of all, when you set up the ladder, they don’t have to be off the floor. They don’t have to be totally off the floor. And by the time the individual steps on the first step, because the flexibility of the ladder, all the legs are on the floor. So you have no warning that this is taking place until you get to where your working level is going to be and then you lean forward or do some movement in a forward direction.
And when you do some movement in a forward direction, then what happens typically is the weight gets shifted immediately towards the rear, and that forward motion sits there and starts to move its rear feet back in alignment to where it’s supposed to be. And when it does if the individual is not ready for that, they can lose their balance.
Finally, Ojalvo indicated in his deposition that he believed that Ainsworth’s accident was caused by racking due to the rapid and unexpected occurrence of the fall and the lack of structural defect in the ladder, but could not explain particularly how the racking occurred because there are several ways to rack a ladder. Ojalvo further speculated that Ainsworth could have racked the ladder by placing his hands on the fourth step and pulling while his feet were on a lower rung, but admitted that Ainsworth’s account of events did not necessarily include any details supporting this theory. Ojalvo also repeatedly answered questions seeking a link between the eyewitness accounts of the fall and his theory that Type II racking or torsional instability caused the accident by explaining that he could never provide such a link with certainty because “we’ll never know” the details of the accident. He also admitted that “I don’t have any evidence” of how Ainsworth acted physically that would support any specific racking scenario. Overall, the theme of Ojalvo’s testimony regarding the precise mechanics of the Type II racking or torsional instability that could have caused Ainsworth’s fall was that “[t]here’s no evidence of it, and there’s no way of knowing. The only evidence is the result.”
The trial court was also aware from the motions in limine referencing Ainsworth’s deposition that he believed that all four feet of the ladder were still on the ground just prior to his fall.
The trial began, and before the motions in limine were addressed, Ainsworth’s coworker on the day of the accident, Steven Parks, testified via videotape. Parks testified that he was a store general manager and was working with regional manager Ainsworth to close a store on the day of the accident. Ainsworth was removing display systems, known as “pucks,” from the walls of the store. Ainsworth was using a ladder while removing the pucks. Both Parks and Ainsworth had previously used the ladder to accomplish general tasks in the store and in closing the store, *300 and the ladder appeared to be in good condition. Throughout the day, Ainsworth did not climb to the top of the ladder to remove the pucks; there were two rungs left. The pucks did not require significant force to remove, as they were simply screwed into slat walls, and Ainsworth removed them without stretching as he positioned the ladder so that he was closer than an arm’s length from the wall.
When asked whether he actually witnessed the accident, Parks indicated that he did not have a “snapshot recall” of the precise moment when Ainsworth fell. Parks explained that he saw Ainsworth fall, in the sense that he looked at Ains-worth at the exact moment he fell, but did not see what led up to him falling. In fact, Parks made it clear that: “I cannot say I saw the ladder bend. I cannot say how he was reaching at that moment, at that given time.” Parks did see Ainsworth “going over” while he was still up in the air and testified that it seemed that Ainsworth hung in the ah' for a moment before he fell. Parks explained that the ladder “sort of’ went out from under Ainsworth and he began moving backwards through the air. Ainsworth then landed on the ground, twisted in the ladder. He was unable to speak at first, was unable to move, and indicated that he was in pain. On cross-examination, Parks admitted that he did not see Ainsworth set up the ladder at the precise location where he fell, but claimed that he saw Ainsworth climb the ladder through his peripheral vision and that he did not fall instantly, although he did not know which rung of the ladder Ainsworth was on when he fell.
Because Ainsworth then sought to call one of his experts to testify, the trial court addressed the pending motions in limine and excluded the testimony of all three of Ainsworth’s experts regarding Type II racking or torsional instability being the cause of the accident. The trial court noted: “It just appears from the excerpts of these depositions that they — that your experts have now conducted tests to substantiate their theory and that the factual basis — the facts of this case don’t really match up with the facts that would be the basis for their opinions.”
Following the rulings on the motions in limine, and without seeking the opportunity to present the live testimony of Ains-worth, Ainsworth’s counsel suggested and agreed to proffer the remaining relevant testimony, depositions (including that of Ainsworth), and evidence and have a directed verdict entered in favor of KLI and KLI Global due to the exclusion of all of the experts. The trial court granted the requested directed verdict.
As part of the proffer, Grate and Maso-ry testified that they believed Type II racking or torsional instability was the cause of Ainsworth’s accident much as they did during their depositions. Ains-worth then proffered the deposition of Ojalvo, detailed above, in which he also expressed the opinion that Type II racking or torsional instability caused the accident.
Finally, Ainsworth proffered his own deposition. Ainsworth explained that he was closing a store and was removing pucks from the wall without the use of tools. Ainsworth testified that he had not used the eight-month-old ladder prior to the day of the accident, but that it was used by others to accomplish general tasks around the store. However, Ainsworth had used the ladder on the day of the accident prior to the time of the accident and had moved the ladder throughout the store as his work progressed. At the time of the accident, Ainsworth had just moved the ladder to a new position and climbed onto it when it collapsed from under him. Ainsworth testified that all four feet of the ladder were on the ground when he climbed onto *301 it before the accident. He had climbed to the third rung of the ladder right before' he fell and did not notice that any foot of the ladder was no longer on the ground. When Ainsworth reached the third rung of the ladder, he was holding the top cap of the ladder as a brace. The ladder did not feel unstable or wobbly before he fell. Ainsworth fell when he had one hand on the top cap of the ladder and reached for a puck with the other hand, and all of sudden became separated from the ladder and fell through the air.
Thereafter, KLI filed a Motion for Final Judgment based on the directed verdict requested by Ainsworth. The trial court then entered a final judgment in favor of KLI and KLI Global.
On appeal, Ainsworth contends that the trial court erred by excluding the testimony of his three expert witnesses for three reasons.
First, Ainsworth asserts that the trial court erred by entertaining the motions in limine, because they were untimely filed on the first day of trial in violation of the trial court’s order setting trial and the parties’ pretrial stipulation. However, we find this argument to be without merit because the record establishes that the untimeliness resulted from the actions of Ainsworth’s counsel in repeatedly failing to make the expert witnesses available for depositions. KLI and KLI Global could not be expected to file motions in limine directed at the experts by calendar call when their depositions were not taken until after calendar call.
Second, Ainsworth asserts that the expert witnesses were entitled to testify regarding Type II racking or torsional instability to establish the inference derived from Cassisi v. Maytag Co., 396 So.2d 1140, 1148 (Fla. 1st DCA 1981), so that the trial court erred by granting the motions in limine directed at the experts. However, we find this argument to be without merit, because while the motions in limine regarding the experts were being considered and at the time Ainsworth elected to take the directed verdict, Ainsworth never argued to the trial court that he was seeking to establish a Cassisi inference (nor was seeking to establish such an inference without expressly referring to Cassisi). Instead, Ainsworth improperly raised this argument for the first time on appeal. See Sunset Harbour Condo. Ass’n v. Robbins, 914 So.2d 925, 928 (Fla.2005)(“As a general rule, it is not appropriate for a party to raise an issue for the first time on appeal.”). As such, the trial court did not err on the basis suggested by Ainsworth. Moreover, because the issue on appeal seeks to tie the admissibility of the expert opinions only to a Cassisi inference, we cannot reverse the trial court’s exclusion of the experts even if it may have been improper to exclude their testimony for all the reasons expressed by the dissent.
However, even had the trial court been aware that Ainsworth was seeking a Cassisi inference, one would not have been available under the circumstances of this case. In Cassisi, which was a products liability case grounded in both strict liability and negligence like the present case, a summary judgment was granted in favor of the manufacturer of a nineteen-month-old clothes dryer that malfunctioned and started a fire. 396 So.2d at 1142-1143. Considering the scenario, the appellate court stated that whether the case was founded on negligence, strict liability, or breach of implied warranty, it was the plaintiff’s burden to establish: “(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier parted possession with the product.” Id. at 1143. However, *302 “when a product malfunctions during normal operation, a legal inference ... arises, and the injured plaintiff thereby establishes a prima facie case for jury consideration,” so that a plaintiff need not carry its burden until such a time (and summary judgment, or directed verdict, see Jones v. Heil Co., 566 So.2d 565 (Fla. 1st DCA 1990), are generally inappropriate). Cassisi, 396 So.2d at 1148.
 In order for a Cassisi inference to arise, the plaintiffs testimony regarding a malfunction is sufficient circumstantial evidence, without expert corroboration (which necessarily must be the case considering that some products which malfunction are destroyed and are not available for testing as a result), to reach the jury, and the plaintiff is not required to pinpoint the defect and exclude all other possible explanations for the malfunction. Id. at 1150, 1151. As such, “the facts essential for the inference’s application are simply proof of the malfunction during normal operation.” Id. at 1151 (emphasis added). Therefore, “if the manufacturer wishes to avoid a jury’s consideration of the issues, it must offer evidence showing there are no genuine issues of material fact to be resolved by a jury rather than suggest possible reasons for the product’s malfunction.” Id.
There are two problems regarding the application of a Cassisi inference to this case. The first problem is that a Cassisi inference arises only where the plaintiff (or in some cases, an eyewitness) testifies and provides evidence that the product was being used normally and that the product malfunctioned. In the present case, at the time Ainsworth called his first expert witness to testify, the motions in limine were considered leading to the exclusion of all three experts, and Ainsworth elected to take a directed verdict, Ains-worth had not testified and provided evidence of the ladder’s malfunction. Parks had testified, but he was not a true eyewitness because he did not witness the precise moment of the accident so as to be able to say that Ainsworth was using the ladder normally or that the ladder malfunctioned; only Ainsworth knew the details of whether he was using the ladder in a normal fashion and how the ladder may have malfunctioned, especially where there were not the visible and unmistakable signs of product malfunction present in eases like Cassisi were there is a fire or other event which actually damages the product as it malfunctions (in the present case, the expert testimony suggests that the ladder was damaged as a result of the fall and not any malfunction that may have caused the fall). As such, at the moment the experts were excluded, even if Ains-worth had requested a Cassisi inference, he would not have been entitled to one where he had failed to seek to testify to establish that the ladder had malfunctioned.
The second problem, which is related to the first, arises from the fact that the Cassisi inference of product defectiveness largely began as a shield to protect plaintiffs from the difficulties resulting from proving then- cases where products were destroyed or severely damaged, like the dryer in Cassisi, when they malfunctioned, so as to prevent expert examination and opinion to establish the nature of the product defect giving rise to the accident. If we were to follow the logic of the dissent, the Cassisi inference would be morphed into a sword for plaintiffs to wield, allowing them to get their cases to a jury based on a single expert’s testimony alone without regard to the factual circumstances of their cases, even where those factual circumstances fail to include any tangible evidence demonstrating that there was any malfunction caused by a defect that result *303 ed in an accident. In other words, an expert could be employed to establish not only the presence of a product defect which caused a malfunction, but the very existence of a malfunction, even though Cassisi requires that the malfunction be demonstrated by plaintiff or witness testimony so as to give rise to an inference of defectiveness (which can then be fleshed out by experts). As such, circumstantial evidence provided by experts should not be permitted to substitute for plaintiff or witness testimony to prove the very occurrence of a malfunction. After all, the intent of Cassisi is to provide an inference so that a plaintiff does not have to pinpoint a defect or exclude other explanations for a malfunction, but only after there has been proof of a malfunction. Consequently, a Cassisi inference was not available to Ainsworth, because, in addition to attempting to establish the nature of the defect, he attempted to improperly employ experts to demonstrate the very existence of a malfunction (which is a tenuous tactic in any event because the experts admitted that they lacked enough information about the accident to explain exactly what occurred).
Third, Ainsworth asserts that the trial court erred by excluding the expert testimony regarding an alternative ladder design that would minimize the risk of Type II racking or torsional instability. However, we find this argument to be without merit, because Ainsworth is unable to establish error regarding the exclusion of the expert testimony on Type II racking or torsional instability as the cause of his accident because of his failure to raise his Cassisi argument below, which was his only argument for seeking admission of the expert testimony on appeal. As such, because the experts could not testify regarding Type II racking or torsional instability due to this procedural irregularity, the possibility of a safer ladder is irrelevant.
In sum, we conclude that the trial court did not err by granting the motions in limine excluding Ainsworth’s three expert witnesses on any ■ of the three grounds raised by Ainsworth on appeal. As such, we affirm in all respects.

Affirmed.

GUNTHER, J., and HOROWITZ, ALFRED J., Associate Judge, concur.
FARMER, J., dissents with opinion.